**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Byzantine Catholic Eparchy of Phoenix, Catholic Eparchy, <br><br> v. <br><br> Burri Law PA, et al., <br><br> Defendants. | No. CV-20-00779-PHX-ROS <br><br> **ORDER** |

Byzantine Catholic Eparchy of Phoenix ("Catholic Eparchy") filed this matter in Arizona state court on January 31, 2020. Defendants Burri Law, P.A., and Dean Allen Burri (collectively "Defendants") received a summons and the complaint on March 23, 2020 and removed the matter to federal court on April 22, 2020. Catholic Eparchy filed a motion to remand arguing Defendants' removal was untimely because Defendants had received a copy of the complaint in January and February 2021, rendering the April 22 removal outside the thirty-day window to remove. Defendants oppose the motion to remand and seek sanctions based on arguments in the motion for remand briefing. The motion to remand will be denied and the motion for sanctions will be granted.

## BACKGROUND

Mr. Burri is an insurance broker and lawyer, who owns and operates Burri Law, a Florida professional association. (Doc. 1-3 at 2). Burri Law represented Catholic Eparchy from January 14, 2016 until sometime in 2018. (Doc. 1-3 at 3, 9–10). During that time, Defendants filed a federal action in Arizona on behalf of Catholic Eparchy. That action

was filed against numerous entities and individuals involved in the administration of Catholic Eparchy's health plan. The details of that litigation are not relevant other than to note that, eventually, the Pope himself allegedly stepped in and ordered Catholic Eparchy to dismiss the suit, which Catholic Eparchy did. Catholic Eparchy believes Defendants committed legal malpractice and fraud in bringing that action. Since those events, the parties have been involved in litigation over the more than $700,000 in attorneys' fees and expenses Catholic Eparchy allegedly owes Defendants for their services. Specifically, in November 2018, Burri Law (Mr. Burri himself was not a named party) filed a Petition to Compel Arbitration in the Middle District of Florida ("Florida litigation"). (Doc. 9). That petition sought to force Catholic Eparchy to arbitrate its liability regarding the allegedly owed attorneys' fees and expenses. Once Catholic Eparchy was served with process and appeared in the Florida litigation, the parties began briefing the merits of the motion to compel.

While that case was pending, on January 31, 2020, Catholic Eparchy filed a complaint in the Maricopa County Superior Court ("Arizona litigation"). (Doc. 1-3 at 23). That complaint alleged Defendants committed attorney malpractice, violated the Arizona Consumer Fraud Act, and breached two contracts. (Doc. 1-3 at 15–22, 24).

The same day it filed its complaint, Catholic Eparchy began a series of strange attempts to complete service of process. Importantly, Catholic Eparchy did not obtain a summons from the Arizona state court when it filed its complaint and none of the early attempts at service of process included service of a summons. As explained in more detail below, Catholic Eparchy's counsel appears to have been confused, and may still be, regarding the distinction between "service" and "service of process."

Catholic Eparchy's first attempt at what it identifies simply as "service" was to file in the Florida litigation a "Notice of Filing of Separate Action" which attached the Arizona complaint. (Doc. 10 at 3). Catholic Eparchy claims that Notice "served" Defendants through Burri Law's counsel, Gregory T. Elliot ("Elliot"), in the Florida litigation. (Doc. 10 at 3). That same day, Catholic Eparchy's counsel emailed a copy of the Arizona

complaint, without a summons, to Elliot, with the following note:

> Attached please find a copy of the Complaint our client filed against your client Burri Law and Mr. Burri, individually, in the Arizona Superior Court in and for the County of Maricopa, on this date. Please let us know if you will be willing to accept *service* on behalf of your client and whether you are representing Mr. Burri personally, and would accept service on his behalf.

(Doc. 20 at 5) (emphasis added). That email implies Catholic Eparchy knew Elliot might not have the authority to accept service on Burri's behalf. Elliot responded on February 4, 2020, stating

> Thank you for your message and attachments. I decline to accept *service of process* from a foreign jurisdiction for any client, including Burri Law, or Dean Burri, individually, and, no – I am not admitted to practice in Arizona and will not be appearing to represent any party to that litigation.

(Doc. 20 at 5–6) (emphasis added).

The "Notice of Filing Separate Action" was struck and refiled on February 17, 2020 in the Florida litigation. (Doc. 10 at 4). The refiling, however, was purportedly to comply with a local rule in that jurisdiction requiring a party file a notice when there was a related case pending elsewhere. (Doc. 10-5). Neither the local rule nor the notice itself made any mention of service of process.

According to Catholic Eparchy, Defendants were then "again served" on February 18, 2020, when Catholic Eparchy filed a motion for summary judgment in the Florida litigation. That motion attached a copy of the Arizona complaint without any summons. (Doc. 10 at 4). Catholic Eparchy asserts "Defendants received repeated notices and service of certified copies of the Arizona complaint" between January 31, 2020 and February 18, 2020. (Doc. 10 at 4).

It is undisputed Catholic Eparchy did not obtain a summons from the Arizona state court until February 24, 2020. (Doc. 1-4 at 6). After obtaining a summons, Catholic Eparchy "separately and timely served [Defendants] with the Summons, Complaint, and Certificate of Compulsory Arbitration on March 23, 2020 via certified mail / return receipt

1 requested." (Doc. 10 at 5 n.3). On April 22, 2020, 30 days after that service of process, Defendants removed the Arizona litigation to this court based on diversity jurisdiction. (Doc. 1). On May 22, 2020, Catholic Eparchy filed a motion for remand, arguing Defendants' removal on April 22, 2020 was untimely based on the service of copies of the complaint in January and February.[1] (Doc. 10 at 4).

On July 13, 2020, Defendants sent Catholic Eparchy, but had not yet filed, a Rule 11 motion for sanctions, requesting Catholic Eparchy withdraw its motion for remand. (Doc. 20 at 17 n.7). Catholic Eparchy responded by letter, refusing to withdraw the motion to remand. (Doc. 20 at 17 n.7). On August 10, 2020, Defendants filed their Rule 11 motion. (Doc. 20). The motion to remand and motion for sanctions are now fully briefed.

**ANALYSIS**

**I.  Motion to Remand**

The resolution of the motion to remand turns on a fundamental rule of civil procedure involving "service of process." Because the parties' briefing includes some confusion on this point, the Court will first establish what, exactly, "service of process" means. After having done so, the motion to remand is simple to resolve.

Courts are not always precise when using the terms, but "service of process" and "service" are very different concepts. "Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988). For example, in federal court, that means delivery through one of the means set forth in Federal Rule of Civil Procedure 4 of the summons *and* the complaint. Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a copy of the complaint."). The summons is a critical document that *must* be served before a court can exercise jurisdiction over the defendant.[2] The Supreme Court has made this explicitly clear for decades. In 1946, the Supreme Court

---

[1] April 22, 2020 is 82 days after January 31, 2020 and 64 days after February 18, 2020. (Doc. 10 at 4).
[2] There is an irrelevant exception regarding issuance of preliminary injunctive relief. *See, e.g.*, *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012) (rejecting argument as "preposterous" that injunctive relief cannot be granted "prior to formal service of process").

- 4 -

stated "service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946). In 1987, the Supreme Court stated "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). And in 1999, the Supreme Court held the summons "continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351 (1999). Without service of the summons, a putative defendant has no obligation to respond to a complaint or otherwise participate in litigation.[3] And it is service of the summons and complaint pursuant to one of the methods authorized by Federal Rule of Civil Procedure 4 that is properly identified as "service of process."

By contrast, "service" is the more generic term simply referring to the "formal delivery . . . to a litigant" of a document. SERVICE, Black's Law Dictionary (11th ed. 2019). For example, once an individual is participating in a case in federal court—*i.e.*, after service of process has been accomplished—"service" of a motion can be completed by any of the methods set forth in Federal Rule of Civil Procedure 5(b). Those means are easier to accomplish than the means allowed by Rule 4. Service of process under Rule 4 often requires in-person delivery while service under Rule 5 allows for documents to be mailed to a party's last known address or sent electronically. Fed. R. Civ. P. 5(b)(2)(C); 5(b)(2)(E).

Courts sometimes use "service" when actually meaning "service of process." Even the Supreme Court, in an opinion devoted almost exclusively to the issue of "service of process," lapsed towards the end of its opinion and referred to "service of process" simply as "service." *Murphy Bros.*, 526 U.S. at 356. Considered in context of specific facts, however, it is always clear what a court means. In the Supreme Court case, the reference

---

[3] The Ninth Circuit has also made it abundantly clear that service of the summons is mandatory. *See, e.g.*, *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) ("A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed. R. Civ. P. 4.").

- 5 -

to "service" was obviously referring to "service of process" as the Supreme Court referenced Rule 4. *Id.* n.7 (citing Rule 4(f) as "describing means of service upon individuals in a foreign country"). Similarly, a Ninth Circuit case discussed "service" but was obviously referencing "service of process." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 610 (9th Cir. 2016)

With the distinction between "service" and "service of process" established, an additional issue must first be addressed: removal procedures are governed by 28 U.S.C. § 1446. Pursuant to that statute, a notice of removal must be filed "within 30 days after the receipt by the defendant, *through service or otherwise*, of a copy of the initial pleading." 28 U.S.C. § 1446(b) (emphasis added). Although the statute requires merely receipt "through service or otherwise," of "the initial pleading," in 1999 the Supreme Court concluded this statutory language has a technical meaning. According to that decision, the time to remove in § 1446(b) begins to run by "simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service" of the summons. *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 347–48 (1999). The Supreme Court explained the time period in § 1446(b) must be read such that one's right to remove a case to federal court does not "slip away before service of a summons." *Id.* at 356.

In other words, *Murphy Brothers* identified the actual "service of process" as the mandatory trigger to begin the removal clock. Simply receiving a copy of the complaint, such as through one of the means of "service" authorized in Rule 5, is not enough. Until a defendant is properly served with a summons, the defendant is not required to take any action and the removal clock has not been triggered. This is not subject to debate.

In 2011, the Ninth Circuit, relying on *Murphy Brothers*, observed "actual notice" of the filing of a state court complaint is "insufficient" to start the removal clock. *Quality Loan Serv. Corp. v. 24702 Pallas Way, Mission Viejo, CA 92691*, 635 F.3d 1128, 1133 (9th Cir. 2011). "[R]ather, the defendant must be 'notified of the action, and brought under a

court's authority, by formal process,' before the removal period begins to run." *Id.* In that case, the plaintiff had sent "notice of the action" to the defendant through postal mail and e-mail. *Id.* That was "insufficient to constitute the formal process" required. Therefore, the "removal clock" did not start, "regardless of whether [the defendant had] actual notice of the action" earlier than thirty days before removal. *Id.* Similarly, in 2019, the Ninth Circuit held *Murphy Brothers* made clear "service of the summons and complaint" is "*what* must be received" for the removal clock to begin. *Anderson v. State Farm Mut. Auto. Ins. Co.*, 917 F.3d 1126, 1130 (9th Cir. 2019). Countless district court opinions in the Ninth Circuit have reached the same result.[4]

With the distinction between "service of process" and "service" having been established, together with the requirement that it is "service of process" that starts the removal clock, resolution of Catholic Eparchy's motion to remand is straightforward. Catholic Eparchy believes the removal was untimely and seeks remand because it repeatedly served the Arizona complaint, without any summons, in the Florida litigation. (Doc. 10 at 3). Catholic Eparchy argues that "service of the [Arizona] Complaint in a sister Federal court" triggered the time to remove because Defendants had received the complaint and a "sister Federal court" had jurisdiction over Defendants. (Docs. 10 at 6–7; 19 at 3). Catholic Eparchy attempts to distinguish the present case from the *Murphy Brothers* based on its belief that Burri Law was "already party to a suit" such that documents filed in that pending suit were sufficient to start the removal clock. (Docs 10 at 6; 19 at 2).

It is difficult to describe Catholic Eparchy's argument in an entirely coherent way. Catholic Eparchy appears to be arguing *Murphy Brothers* was "concerned with the possibility that a party's procedural right to remove a case to federal court could slip away 'before one is subject to *any* court's authority.'" (Doc. 10 at 6 (quoting *Murphy Bros.*, 526

---

[4] *See, e.g.*, *Madren v. Belden, Inc.*, No. 12-CV-01706-RMW, 2012 WL 2572040, at *2 (N.D. Cal. July 2, 2012) (citing *Murphy Brothers* as establishing "[f]ormal service of process, measured from the service date according to state law, is a prerequisite for triggering the 30–day removal period"); *Camarata v. Dep't of Soc. & Health Servs.*, No. 3:17-CV-05878-RJB, 2018 WL 317029, at *2 (W.D. Wash. Jan. 8, 2018) (noting *Murphy Brothers* established "service of process is a prerequisite for running the 30-day removal period under § 1446(b)").

U.S. at 356) (emphasis added by the Court)). Thus, according to Catholic Eparchy, *Murphy Brothers* "has been held to be distinguishable from situations where a party is served a pleading when it is already party to *a suit*." (Doc. 10 at 6 (emphasis added)). Essentially, Catholic Eparchy contends that once a party is engaged in litigation before *any* federal court, anywhere in the United States, that party can be "served" a copy of a complaint initiating separate litigation in a state court elsewhere and that notice is sufficient to trigger the time to remove the state-court matter. This argument has no legal basis and the case Catholic Eparchy cites in support is irrelevant.

In *Dutro v. Hilarides*, plaintiff's initial complaint in state court did not contain any grounds for removal. While in state court, Plaintiff filed a motion to amend and a proposed amended complaint. The proposed amended complaint provided a basis for federal jurisdiction. *Dutro v. Hilarides*, No. 1:12-CV-0212 LJO-BAM, 2012 WL 1552772, at *3 (E.D. Cal. May 1, 2012), *report and recommendation adopted*, No. 1:12-CV-0212 LJO-BAM, 2012 WL 1856503 (E.D. Cal. May 21, 2012). Because defendants had already appeared, and thus were within the jurisdiction of the state court, the *Dutro* court held the time to remove was triggered when the motion to amend the complaint was filed.[5] Catholic Eparchy quotes *Dutro* to say "[o]nce a defendant is properly before *a court*, and he discovers grounds that would justify removal, he is required to remove within thirty days of discovering those grounds, regardless of whether such information is contained in formally served amended pleadings or from some other source, such as discovery or even deposition testimony." *Id.* at *4 (emphasis added). But Catholic Eparchy misunderstands the crucial difference between *Dutro* and the present suit. The defendants in *Dutro* had already "appeared in the state court action and were actively defending the case." *Id.* Thus, the *Dutro* court reasoned the defendants were already under the state court's jurisdiction

---

[5] The Court notes *Dutro* was likely decided incorrectly. "In determining what triggers the removal period, a minority of courts have held that the removal period begins when a plaintiff files a motion to amend. On the other hand, the majority of courts have held that the thirty-day removal period does not begin to run until a state court judge enters an order granting leave to file an amended complaint." *Drain v. S.C. Dep't of Educ.*, No. 5:18-CV-03267-JMC, 2019 WL 4409461, at *2 (D.S.C. Sept. 16, 2019) (citations and internal quotation marks omitted). The latter rule is more sensible given that, until the motion to amend is granted, there simply is no complaint asserting a basis for federal jurisdiction.

and only required receipt of the amended complaint to trigger the time to remove.[6] *Id.* But, here, Defendants were not involved in the Arizona state-court litigation. Defendants would first have to be brought into the Arizona state court litigation through service of process before *Dutro* might be relevant. *Dutro* simply stands for the unremarkable, and irrelevant, proposition that when the court from which removal is sought already has jurisdiction over a defendant, service in that litigation of a document establishing the presence of federal jurisdiction will start the removal clock.

It is undisputed Defendants were not properly served with a summons from the Arizona litigation until March 23, 2020. Therefore, that is the date the removal clock was triggered, and Defendants' notice of removal filed on April 22, 2020, was timely. Therefore, the motion to remand will be denied.

## II.    Motion for Sanctions

Defendants argue the arguments and factual representations in Catholic Eparchy's motion to remand violate Federal Rule of Civil Procedure 11. That rule subjects an attorney to sanctions when a "pleading, written motion, and other paper" is "presented for any improper purpose," "the claims, defenses, and other legal contentions are [not] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," or "the factual contentions [lack] evidentiary support." Fed. R. Civ. P. 11(b). "[T]he extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining" whether a modification of existing law is frivolous. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. "Although arguments for a change of law are not required to be specifically so identified, a contention that is so identified should be

---

[6] *Dutro* itself relies on *Carvalho v. Equifax Info. Servs.*, 629 F.3d 876 (9th Cir. 2010). In *Carvalho*, the Ninth Circuit held removal was timely within 30 days of deposition testimony that provided the first indication that the case met the amount-in-controversy requirement for removal. *Id.* at 886–87. As in *Dutro*, the defendant in *Carvalho* had already appeared before the state court and was actively defending the claims in question. *See Carvalho v. Equifax Info. Servs.*, No. C 08-1317 JF (HRL), 2008 WL 2693625, at *1 (N.D. Cal. July 7, 2008), *aff'd*, 629 F.3d 876 (9th Cir. 2010).

1 viewed with greater tolerance under the rule." *Id.*

2 In response to the motion for sanctions, Catholic Eparchy summarizes the argument it made in its papers seeking remand: "1) Burri Law, P.A. was electronically served with a copy of the Arizona Complaint in the Florida litigation through Florida counsel, Greg Elliot, who had appeared on behalf of Burri Law, P.A. (and thereby also Burri himself as sole owner and sole director of Burri Law, P.A.), in the Florida case; and 2) this notice and service set the deadline by which Burri was required to remove the Arizona action to Federal court." (Doc. 21 at 1–2 (footnote omitted)). Catholic Eparchy argues "the first proposition is plainly true, and the second is a fair and reasonable interpretation of the law and is (at a minimum) not foreclosed by existing law." (Doc. 21 at 2). The first proposition, while questionable, is not sanctionable. The second proposition, however, has no legal support and, as such, is sanctionable.

### A. Service in Florida Litigation

In its motion to remand, Catholic Eparchy repeatedly insists Defendants were "served" through the Florida litigation. First, "[o]n January 31, 2020, notice and a copy of the Arizona Complaint were electronically served on Defendant Burri Law, P.A. (and thereby Burri himself as sole owner and sole director and officer of Burri Law, P.A.) through Defendants' counsel, Gregory T. Elliot, in the Florida Fee Arbitration Action, as the filing of this related action was material to pending pleadings before that Court." (Doc. 10 at 3). Second, Catholic Eparchy "once again served a copy of the Arizona Complaint on Burri Law" when it refiled the Notice of Pendency of Related Cases, with the Arizona complaint attached, in the Florida litigation. (Doc. 10 at 4). Third, "[o]n February 18, 2020 the Eparchy filed its Motion for Summary Judgment in the Florida Fee Arbitration Action, which again attached a certified copy of the Arizona Complaint as Exhibit 1, thereto." (Doc. 10 at 4).These statements are accurate in that Catholic Eparchy filed the referenced documents in the Florida litigation and "served" them pursuant to Rule 5 on Florida counsel. Defendants, quite reasonably, read Catholic Eparchy's statements as arguing Catholic Eparchy effected "service of process" by filing the documents in the Florida

litigation. But, in context, that is not what Catholic Eparchy meant. Rather, as discussed below, Catholic Eparchy—and its counsel—failed to research the matter and argued service of a document pursuant to Rule 5 in an unrelated matter should be sufficient to trigger the removal clock. While that legal position is sanctionable, the *factual* position that the complaint was "served" as contemplated by Rule 5 is not.

### B. Service in Florida Did Not Trigger Time to Remove

Catholic Eparchy's motion to remand was premised on its contention that "service" of the Arizona complaint in the Florida litigation "set the deadline by which Burri was required to remove the Arizona action to Federal court." (Doc. 21 at 1–2 (footnote omitted)). As found, at the time Catholic Eparchy made this statement it had been established law, for over twenty years, that the time to remove under § 1446(b) is triggered only upon "service of process." It is undisputed Catholic Eparchy did not obtain a summons from the Arizona state court until February 24, 2020 and no summons was served until March 23, 2020. Catholic Eparchy presents no plausible, or remotely coherent argument that the removal clock began before Defendants received that summon on March 23, 2020.

Catholic Eparchy's legal position—that the Florida filings constituted sufficient "service" to start the removal clock—is wrong because, as found, "serving" copies of a complaint and completing "service of process" are distinct. Only the latter is relevant for purposes of the removal clock. Thus, the critical inquiry in resolving the motion to remand is not when the Arizona complaint was "served" but when Catholic Eparchy completed "service of process."

The record is replete with examples of Catholic Eparchy's untenable position. For example, in its response to the letter enclosing a copy of the Rule 11 motion, Catholic Eparchy's counsel informed defense counsel:

> Your assertions based on Arizona law miss the point. The Eparchy contends that Mr. Burri was served with the Arizona Complaint in the Florida litigation. The requirements of Arizona law are immaterial, as Mr. Burri was served with the Notice of Pendency of Related Action (along with the attached Complaint) in the Middle District of Florida pursuant to the

- 11 -

> laws of that forum, which provides that "Counsel shall notify the Court by filing and serving a 'Notice of Pendency of Related Actions' that identifies and describes any related case." Local Rule 1.04(b), Middle District of Florida (emphasis added). More generally, that court recognizes that motions are "served" on the opposing party. See Local Rule 3.01(d), Middle District of Florida ("Each party opposing a motion or application shall file within 14 days after service of the motion or application a response that includes a memorandum of legal authority in opposition to the request") (emphasis added). This is also true of the federal courts as a whole, which require that all written motions and notices must be "served on every party." Fed. R. Civ. P. 5(a) (emphasis added). The Eparchy asserts that this service constitutes "receipt by the defendant, through service or otherwise," of the Arizona Complaint. 28 U.S.C. 1446(b).

(Doc. 21-4 at 3.) Noticeably lacking from this response is the citation of *any* legal authority supporting this position. Also lacking is any acknowledgment of the Ninth Circuit opinions and district court opinions directly contradicting Catholic Eparchy's position.

Catholic Eparchy attempts to explain its position that the rule from *Murphy Brothers* requiring service of process should not apply because "[t]here was no second litigation in *Murphy Brothers*, and the defendant in that case had not yet been made subject to any court's jurisdiction." (Doc. 21 at 7). Thus, Catholic Eparchy argues *Murphy Brothers* "is a far cry from the current situation, where Burri Law, P.A. was served with a conformed copy of the Complaint in the Middle District of Florida, and where it had voluntarily submitted to that court's jurisdiction." (Doc. 21 at 7).

It is difficult to see how counsel could have read *Murphy Brothers* and arrived at such a conclusion. The central holding of *Murphy Brothers* is that service of process is necessary for the removal clock to start. And while counsel claim the present situation involves a "question of first impression," not all questions of first impression can avoid Rule 11 sanctions. A question may be so utterly baseless or so obviously foreclosed by existing authority that no reasonable attorney would argue the issue. That is the present situation. A reasonable and competent inquiry would have discovered the rule established

in *Murphy Brothers* is that only service of process triggers the time to remove. Even if *Murphy Brothers* were somehow deemed opaque regarding this rule, the two published Ninth Circuit opinions and stacks of district court decisions after *Murphy Brothers* removed any uncertainty.

Catholic Eparchy identifies no case law, no minority opinions, no law review articles, and no attorneys' briefs which contain support for its argument that the removal clock starts merely upon providing notice of the complaint, without a summons, through an attorney representing a client in separate litigation pending in a different jurisdiction. In short, Catholic Eparchy's argument that the removal clock was triggered in January or February 2020 was a legal contention not warranted by existing law or a nonfrivolous argument for changing existing law.

No knowledgeable or careful attorney could research the matter and conclude service under Rule 5 is sufficient when no summons has been served. The conflation of "service" and "service of process" in this matter is simply beyond the Court's comprehension and an attorney with substantial experience—like Mr. Gerding—could not reasonably believe that his legal position was justified. Counsel is subject to sanctions.[7]

### C. Amount of Sanctions

Under Rule 11, sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." When, as here, sanctions are being imposed upon motion from a party, a court may require "payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). A court may also "award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion" for sanctions. Fed. R. Civ. P. 11(c)(2).

Catholic Eparchy's motion to remand required Defendants incur the attorneys' fees and expenses associated with opposing that motion. That motion had no basis and Catholic Eparchy's counsel will be required to reimburse Defendants' for the fees and costs

---

[7] Defendants also argue the motion to remand was presented for an improper purpose. The Court need not address this basis.

associated with opposing the motion to remand. When Catholic Eparchy's counsel received the Rule 11 motion, they choose not to withdraw the motion within the safe harbor. Given that the motion to remand was obviously foreclosed by existing authority, counsel's refusal to take advantage of the Rule 11 safe harbor is puzzling. In the correspondence between the parties, and the documents filed with the Court, Catholic Eparchy has insisted that its legal arguments had a good faith basis and has refused to acknowledge its arguments and representations were unwarranted. Moreover, counsel have refused to acknowledge it is improper to make factual assertions that are obviously foreclosed by the record. Counsel's behavior falls *far* below an acceptable level and counsel will also be required to pay the reasonable fees and expenses associated with the motion for sanctions.

### III.    Notice of Pending Motions

On March 8, 2021, the parties filed a "Joint Pending Motions Notification." (Doc. 31). That document, allegedly filed pursuant to Local Rule 7.2(n), requests "an update on the status of the pending motion[s]." In the usual case, such an unauthorized filing would not merit discussion once the motions were resolved. In this case, however, the parties failed to comply with the local rule. The Court takes this opportunity to remind counsel to familiarize themselves with the local rules and procedures.

According to Local Rule 7.2(n),

> Pending Motions Notification. Whenever any motion or other matter has been taken under advisement by a District Judge or Magistrate Judge for more than one hundred and eighty (180) days, the attorneys of record in the case shall inquire of the Court, in writing, as to the status of the matter. Pending Motions Notifications filed in electronic form must be submitted *according to the Administrative Policies and Procedures Manual*.

(Emphasis added). The Court's Administrative Polices and Procedures Manual states, in relevant part,

> A document filed pursuant to LRCiv 7.2(n) to inquire of the Court the status of any motion or other matter that has been filed under advisement for more than one hundred and eighty (180) days must be e-filed using the LRCiv 7.2(n) inquiry event found in the Other Documents category. Entries made with this event cannot be accessed by judges, chambers staff,

or the public. A limited number of select staff in the Clerk's Office will monitor these entries and provide relevant information to chambers without revealing the identity of the filer.

In the future, the parties are to comply with Local Rule 7.2(n).

Accordingly,

**IT IS ORDERED** Catholic Eparchy's motion to remand (Doc. 10) is **DENIED**.

**IT IS FURTHER ORDERED** Defendants' motion for sanctions (Doc. 20) is **GRANTED**. Attorneys Paul S. Gerding, Jr. and Jeffrey M. Giancana and the law firm Kutak Rock LLP shall pay Defendant's reasonable attorneys' fees and other expenses related to the motion to remand (Doc. 10) and motion for sanctions (Doc. 20), including the reply (Doc. 22). The parties shall confer within seven days of this Order and, if they can reach agreement, no later than **March 17, 2021**, they shall file a stipulation regarding the amount of the attorneys' fees to be paid. If they cannot agree, no later than **March 17, 2021**, Defendants shall file a motion seeking attorneys' fees which identifies the exact amount requested with supporting documentation. Catholic Eparchy shall file its response no later than **March 24, 2021** and Defendants shall file its reply no later than **March 31, 2021**.

**IT IS FURTHER ORDERED** the Pending Motions Notification (Doc. 31) is **DENIED** as moot.

**IT IS FURTHER ORDERED** the MIDP deadlines are reinstated. The stay (Doc. 30) is **VACATED**. Parties shall treat this Order as "the first responsive pleading" for MIDP purposes. For example, parties shall serve their initial discovery responses no later than **April 9, 2021**.

Dated this 10th day of March, 2021.

Honorable Roslyn O. Silver
Senior United States District Judge