**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Byzantine Catholic Eparchy of Phoenix, <br> Plaintiff, <br> v. <br> Burri Law PA, et al., <br> Defendants. | No. CV-20-00779-PHX-ROS <br><br> **ORDER** |

Defendants Burri Law, P.A., and its owner, Dean Allen Burri, represented the Byzantine Catholic Eparchy of Phoenix ("Catholic Eparchy") from January 14, 2016 until sometime in 2018. (Doc. 1-3 at 3, 9-10). During the representation, Defendants filed an action against entities and individuals involved in the administration of the Catholic Eparchy's health plan. (Doc. 1-3 at 7). The Catholic Eparchy argues Defendants committed malpractice, fraud, and breach of contract in bringing that action. (Doc. 1-3 at 15-22).

On September 22, 2021, the parties filed a Joint Notice of Discovery Dispute regarding purportedly privileged materials. (Doc. 62). In the notice, Catholic Eparchy claims it has no obligation to produce two documents, a memorandum and a timeline, due to alleged privileges. (Doc. 62 at 3). The Catholic Eparchy also requests a protective order. (Doc. 62 at 4). Defendants argue the two documents are not covered by any privileges and that a protective order would be inappropriate. (Doc. 62 at 3-5).

Catholic Eparchy has failed to make the required showing for any of its claimed privileges, and it has not satisfied the standard for protective orders under the law.

Defendants are entitled to the requested documents, and the request for a protective order is denied.

## BACKGROUND

Dean Allen Burri is an insurance broker and lawyer who owns and operates Burri Law, P.A., a Florida professional association. (Doc. 1-3 at 2). Burri Law represented the Catholic Eparchy from January 14, 2016 until sometime in 2018. (Doc. 1-3 at 3, 9-10). During that time, Defendants filed a federal action in Arizona on behalf of the Catholic Eparchy against numerous entities and individuals involved in the administration of the Catholic Eparchy's health plan. In November 2018, Burri Law filed a Petition to Compel Arbitration in the Middle District of Florida, (Doc. 9 at 5), seeking to force the Catholic Eparchy to arbitrate its liability regarding more than $700,000 in attorneys' fees and expenses the Catholic Eparchy allegedly owed Burri Law.

While that case was pending, on January 31, 2020, the Catholic Eparchy filed a complaint in the Maricopa County Superior Court, alleging Defendants committed attorney malpractice, violated the Arizona Consumer Fraud Act, and breached two contracts formed between the parties in bringing the action regarding the Catholic Eparchy's health plan. (Doc. 1-3 at 15-23). Defendants removed the matter to federal court on April 22, 2020. (Doc. 1). On March 10, 2021, the Court denied the Catholic Eparchy's motion to remand the matter to state court and granted the Defendants' motion for sanctions against attorneys Paul S. Gerding Jr. and Jeffrey M. Giancana and the law firm Kutak Rock LLP. (Doc. 32 at 15).

On September 22, 2021, pursuant to the Court's Rule 16 Scheduling Order, (Doc. 46), the parties filed a "Joint Notice of Discovery Dispute re: Privileged Materials." (Doc. 62). In the notice, the Catholic Eparchy claims alleged privileges apply to two documents, a memorandum and a timeline, sent from alleged attorney Bishop Kurt Burnette to Archbishop Christophe Pierre, the Vatican's ambassador to the United States. (Doc. 62 at 3). Specifically, the Catholic Eparchy claims the documents are protected from disclosure by: (1) the First Amendment under *Serbian East Orthodox Diocese for the United States of America and Canada v. Milivojevich*, 426 U.S. 696, 721 (1976); (2) as a matter of

diplomatic privilege and immunity; (3) attorney-client privilege; and (4) work-product privilege. (Doc. 62 at 3). Defendants argue that the documents are not subject to any valid privilege. (Doc. 62 at 2-3).

This dispute does not involve clean assertions of protected privileges. Rather, it appears the Catholic Eparchy is willing to waive all possible privileges in this matter and produce all the documents if the Court issues a protective order over all pretrial discovery. (Doc. 62 at 2). Thus, the Catholic Eparchy states it is willing "to disclose to Mr. Burri the aforesaid documents and even allow for sharing of same under protective order in related lawsuits filed by Mr. Burri against various church officials and entities in other jurisdictions, provided that privileges are not thereby waived for future discovery." (Doc. 62 at 4). Defendants contends a protective order is not warranted. (Doc. 62 at 4-5).

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b). "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial or for another party or its representative." Fed. R. Civ. P. 26(b)(3). Objections to requests for production of documents must "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).

## ANALYSIS

### I. Privilege

In the Joint Notice of Discovery Dispute, the Catholic Eparchy offers four reasons for not disclosing the withheld documents. There is no dispute the documents are relevant and responsive to discovery requests and that, absent some privilege, they are required to be produced. The Court will address each of the Catholic Eparchy's arguments in turn.

### A. The First Amendment

The Catholic Eparchy claims the withheld documents "discuss internal church governance related to pending and potential litigation with Mr. Burri." (Doc. 62 at 3).

They argue this means the documents are "constitutionally protected from scrutiny as an issue of internal church governance." (Doc. 62 at 3). In support of this assertion the Catholic Eparchy cites *Serbian East Orthodox Diocese for the United States of America and Canada v. Milivojevich.* 426 U.S. at 721. That case is inapposite and the claim of privilege is erroneous.

In 1963, the Holy Assembly of Bishops and the Holy Synod of the Serbian Orthodox Church suspended and removed Dionisije Milivojevich as Bishop of its American-Canadian Diocese. *Id.* at 697-98. Following protracted litigation, the Supreme Court of Illinois "essentially h[eld] that Dionisije's removal and defrockment had to be set aside as 'arbitrary' because the proceedings resulting in those actions were not conducted according to the Illinois Supreme Court's interpretation of the Church's constitution and penal code." *Id.* at 708. The Supreme Court reversed on the ground that the First Amendment prohibits civil courts from substituting their interpretations of hierarchical religious organizations' rules and regulations in place of the tribunals constituted by those religious organizations. *See id.* at 721-25. Justice Brennan, writing for the Court, held: "under the guise of 'minimal' review under the umbrella of 'arbitrariness,' the Illinois Supreme Court has unconstitutionally undertaken the resolution of quintessentially religious controversies whose resolution the First Amendment commits exclusively to the highest ecclesiastical tribunals of this hierarchical church." *Id.* at 720.

Here, unlike *Milivojevich*, the Defendants have not asked the Court to apply or interpret the Catholic Eparchy's rules. Nor is the Court pressed to overrule, modify, or in any way affect a decision by a tribunal or other entity within the Catholic Eparchy regarding canon law or any other form of religious dictate. Rather, the Court is requested to determine whether documents purportedly prepared in connection with civil litigation are shielded from disclosure. The Catholic Eparchy has offered no legitimate reason or applicable law to preclude disclosure of these documents because it would affect governance or structure of the Catholic Eparchy. The First Amendment's Free Exercise Clause and Establishment Clause offer religious organizations wide latitude to structure and govern their organizations in accordance with their own sincerely held beliefs, but the

religion clauses do not offer an immunity against civil discovery. *Cf. Cason v. Federated Life Ins. Co.*, 510 Fed.App'x. 663, 665 (9th Cir. 2013) (holding the district court properly found appellant's documents were not protected from disclosure "under the Establishment Clause because the subpoena had a secular purpose, did not advance or inhibit religion, and did not foster excessive government entanglement with religion.") (citation omitted).

### B. Diplomatic immunity

Next, the Catholic Eparchy claims that the documents "enjoy inviolability" because they were "written to a current U.S. diplomat and are his papers." (Doc. 62 at 3). In support of this claim, the Catholic Eparchy cites law from two sources, (Doc. 62 at 3), neither of which are applicable to the present dispute.

First, the Catholic Eparchy points to Article 31 of the Vienna Convention on Diplomatic Relations. 23 U.S.T. 3227, Art. 31 (Apr. 18, 1961). Article 31.1 of the Vienna Convention provides: "A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State. He shall also enjoy immunity from its civil and administrative jurisdiction . . ." And article 31.2 provides, "[a] diplomatic agent is not obliged to give evidence as a witness." Defendants do not seek to subject Archbishop Pierre to the civil jurisdiction of the courts, nor do they ask him to give evidence as a witness. Rather, Defendants ask the Catholic Eparchy, which is not entitled to immunity under the Vienna Convention, to disclose documents in discovery.

Second, the Catholic Eparchy cites 22 U.S.C. § 254d, which provides that actions against individuals entitled to immunity under the Vienna Convention shall be dismissed. Again, no entity or individual entitled to diplomatic privileges or immunity is at issue here. The only issue is whether the Catholic Eparchy is required in litigation to disclose its own documents, which it concedes were shared with several non-diplomats (Doc. 62 at 2). Because the Catholic Eparchy is not a diplomatic agent, it is not protected from its ordinary discovery obligations by diplomatic immunity.

### C. Attorney-client privilege

The Catholic Eparchy also claims that the documents are shielded by attorney-client privilege. (Doc. 62 at 3).

Attorney-client privilege protects confidential communications between a lawyer and their client, or prospective client, in connection with representation. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). As the Ninth Circuit has recognized, "[t]he fact that a person is a lawyer does not make all communications with that person privileged." *United States v. Martin*, 278 F.3d 988, 999 (2002). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed. Accordingly, it has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) (internal citations omitted). The party asserting attorney-client privilege bears the substantial burden of establishing all elements of the privilege. *Martin*, 278 F.3d at 999-1000.

The Plaintiff has not met the burden of establishing attorney-client privilege applies here. As a preliminary matter, the Catholic Eparchy has offered only scant explanation to support its contention that the documents are "confidential and privileged."[1] (Doc. 62 at 3). It is strange that the Catholic Eparchy has offered to provide the documents if Defendants agree to a protective order and "provided that privileges are not thereby waived for future discovery." (Doc. 62 at 4). There is no precedent under which the Catholic Eparchy could disclose the documents and still retain a privilege for future discovery.

Further, Catholic Eparchy has failed to establish Bishop Burnette and Archbishop Pierre had a valid, enforceable attorney-client relationship. Moreover, if the privilege did exist, it was waived when Burnette disclosed the communication to third parties. The Catholic Eparchy admits that the documents sent from Burnette to Pierre were shared on several occasions, including with the Catholic Eparchy. (Doc. 62 at 2). The Catholic Eparchy was a third-party outside of any attorney-client relationship Burnette and Pierre may have had. It therefore appears Burnette waived the privilege when he shared the documents with the Catholic Eparchy.

---

[1] Based on the parties' representations in the Joint Notice, and the July 13, 2018 date listed for the documents in the Catholic Eparchy's privilege log (Doc. 62-1), the Court infers that the memorandum and timeline were sent by Burnette to Pierre regarding the 2018 lawsuit filed by Defendants that gives rise to the Catholic Eparchy's claims.

The Catholic Eparchy argues without adequate legal authority that the common interest doctrine prevents waiver. (Doc. 6 at 3). The common interest doctrine, also referred to as the joint defense privilege, recognizes that "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (quoting *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990)). The common interest doctrine "protects the confidentiality of communications passing from one party to the attorney of another party when made to further a joint effort." *Avocent Redmond Corp. v. Rose Elec., Inc.*, 516 F.Supp.2d 1199, 1202 (W.D. Wash. 2007). To establish the privilege, "the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986) (citing *In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F.Supp. 381 (S.D.N.Y. 1975); *Avocent Redmond Corp.*, 516 F.Supp.2d at 1203. Although the common interest doctrine applies even to situations where litigation has not commenced, it is nevertheless limited to those situations in which the parties asserting the privilege share a joint interest in a legal matter. *Cf. In re Santa Fe Int'l Corp.*, 272 F.3d 705, 712 (5th Cir. 2001) ("This privilege encompasses shared communications between various co-defendants, actual or potential, . . . to the extent that they concern common issues and are intended to facilitate representation.") (quoting *Aiken v. Texas Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 623 (E.D. Tex. 1993)); *Gonzalez*, 669 F.3d at 978. The Catholic Eparchy has not demonstrated Burnette or Pierre were involved in any litigation, or that they shared any legal interest with the Catholic Eparchy. Rather, it appears that Burnette and Pierre were communicating on the subject of the Catholic Eparchy's 2018 litigation as third parties. The Catholic Eparchy has thus failed to establish a common interest privilege.

### D. Work-product privilege

Finally, the Catholic Eparchy argues that the documents are protected by work-product privilege. The work-product privilege doctrine protects "documents and tangible

things prepared by a party or his representative in anticipation of litigation" from discovery. *United States v. Richey*, 632 F.3d 559, 657 (9th Cir. 2011) (quoting *Admiral Ins. Co. v. United States Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)). Like attorney-client privilege, "work-product doctrine's protections are waivable." *Id.* (citing *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010)). The Catholic Eparchy has not demonstrated that the withheld documents were created in anticipation of litigation. The mere statement that the documents were created by a lawyer for an ambassador, who may or may not have been his client, is not enough. To receive the benefit of privilege, the Catholic Eparchy must provide more than a bare assertion that a privilege should apply. *Cf. Burlington N. & Santa Fe Ry. Co. v. United States Dist. Ct. for Dist. of Mont.*, 4408 F.3d 1142, 1147 (9th Cir. 2005) ("Rule 26 clarifies that a proper assertion of privilege must be more specific than a generalized, boilerplate objection.").

**II.    Protective order**

The Ninth Circuit has repeatedly held there is a "strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003); *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). The presumption in favor of access exists to ensure that federal courts remain accountable and to foster public confidence in the administration of justice. *Ctr. for Auto Safety*, 809 F.3d at 1096 (citation omitted). Therefore, "[a] party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Kamakana*, 447 F.3d at 1178 (citing *Foltz*, 331 F.3d at 1135). "Under this stringent standard, a court may seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Ctr. for Auto Safety*, 809 F.3d at 1096-97 (quoting *Kamakana*, 447 F.3d at 1178) (modification in original). Some examples of a compelling interest recognized by the Ninth Circuit include, "when a court record might be used to 'gratify private spite or promote public scandal,' to circulate 'libelous' statements, or 'as sources of business information that might harm a litigant's competitive standing.'" *Id.* (quoting *Nixon v.*

*Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).  Even when a compelling reason to issue a protective order exists, the court must "'conscientiously balance[] the competing interests' of the public and the party who seeks to keep certain judicial records secret." *Kamakana*, 447 F.3d at 1179 (quoting *Foltz*, 331 F.3d at 1135) (modification in original).

The Catholic Eparchy claims a "protective order is needed in this matter due to the highly sensitive nature of these and other documents in this case. . . . Said documents and all other confidential and privileged materials as heretofore described should be under a protective order to protect all parties and the Eparchy from annoyance, embarrassment, and oppression." (Doc. 62 at 4) (citing Fed. R. Civ. P. 26(c)).  This limited statement does not meet the legal mark. The Catholic Eparchy falls woefully short of demonstrating compelling reasons to justify a protective order, much less offering an adequate justification for balancing the Catholic Eparchy's interest in secrecy above the public's right of access.  Indeed, the Catholic Eparchy fails to cite even a single case in support of its argument for a protective order.  Therefore, the Court finds that a protective order is not warranted.

Accordingly,

**IT IS ORDERED** Byzantine Catholic Eparchy of Phoenix shall, within fifteen days from the date of the Order, produce the document(s) associated with Bates Number BCEP000555-558 sent from Kurt Burnette to Christophe Pierre on or around July 13, 2018.

**IT IS FURTHER ORDERED** Byzantine Catholic Eparchy of Phoenix shall, within fifteen days from the date of the Order, produce the document(s) associated with Bates Number BCEP000618-619 sent from Kurt Burnette to Christophe Pierre on or around July 13, 2018.

Dated this 4th day of October, 2021.

Honorable Roslyn O. Silver
Senior United States District Judge